**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DAVID A. DODSON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **A-25-CV-01162-RP** |
| | § | |
| **MARSHA McLANE and MANAGEMENT AND TRAINING CORPORATION,** | § § | |
| **Defendants.** | § | |

**ORDER**

Before the Court are Plaintiff David A. Dodson's pro se complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1); Defendant Management & Training Corporation's (MTC) Motion to Dismiss (ECF No. 14); Plaintiff's Application for a Preliminary and/or Temporary Injunction (ECF No. 17); Defendant Marsha McLane's Motion to Dismiss and Brief in Support (ECF No. 22-23); and Plaintiff's response to Defendant McLane's motion to dismiss (ECF No. 30). Upon review of the parties' pleadings, the Court grants Defendants' motions to dismiss and denies Plaintiff's application for a preliminary and/or temporary injunction.

## I. BACKGROUND

In 2013, a jury found Plaintiff to be a sexually-violent predator (SVP) and a court ordered him to into civil commitment.[1] Plaintiff is currently under the supervision of the Texas Civil Commitment Office (TCCO) and resides at the Texas Civil Commitment Center (TCCC) in Littlefield, Texas. In his complaint, Plaintiff names two defendants: Marsh McLane, TCCO Executive Director; and MTC, which manages the daily operations at the TCCC.

---

[1] Plaintiff was originally civilly-committed as a SVP in 2008; however, that judgment was reversed on appeal and remanded for a new trial. *See In re Commitment of Dodson*, 311 S.W.3d 194, 195 (Tex. App.—Beaumont 2010, pet. denied). After a new trial, Plaintiff was again found to be an SVP and ordered to civil commitment. *In re Commitment of Dodson*, 434 S.W.3d 742, 744 (Tex. App.—Beaumont 2014, pet. denied).

In his complaint, Plaintiff alleges that his original commitment order stated he was to be "civilly committed … in accordance with Tex. Health & Safety Code § 841.081 for outpatient treatment and supervision, [which] shall continue until the behavioral abnormality has changed…" (ECF No. 1 at 4-5.) From May 2009 until September 1, 2015, Plaintiff states he resided at the Southeast Texas Transitional Center (STTC). At the STTC, Plaintiff alleges he was allowed to leave the facility unsupervised on numerous occasions, and that he utilized public transportation to travel to grocery stores and the like. He states that, while at the STTC, he never committed a criminal act equivalent to a felony or misdemeanor.

Plaintiff states that, on June 17, 2015, the Texas Legislature amended the Sexually Violent Predators Act (SVPA) and required courts to modify SVP's commitment orders if they conflicted with the amendments. Plaintiff alleges that his committing court never issued an order for him to be placed in inpatient treatment. Plaintiff states that, on September 1, 2015, Defendant McLane's agents ordered him to board a bus and transported him to Littlefield, Texas, where he was locked up in the TCCC. He states that, on October 21, 2015, the committing court signed an order placing him in a tiered treatment program as well as an amended order of civil commitment. Plaintiff alleges that neither order placed him into inpatient treatment or authorized McLane and MTC to confine him at the TCCC.

Plaintiff alleges the inpatient treatment scheme at TCCC violates his substantive and procedural due process rights under the Fourteenth Amendment. He states that, since 2015, only 16 individuals have been conditionally released from the TCCC whereas 33 individuals have died in custody. Plaintiff alleges the SVPA makes McLane the sole authority on determining whether an individual will receive inpatient or outpatient treatment, but because she is neither a judge, psychiatrist, nor sex offender therapist, she does not have the necessary professional judgment to

make this decision. Plaintiff argues the implementation of the SVPA's 2015 amendments renders the statute punitive in nature.

Plaintiff states that TCCO requires Plaintiff and other individuals in the TCCC to pay 33% of his income to TCCO, including money sent from family and friends, money earned through the Resident Work Program, and all federal income. He alleges that, in 2020, he was required to pay 33% of his federal stimulus money. He alleges the committing court ordered the State of Texas to pay all costs related to his civil commitment and treatment. Plaintiff alleges that the TCCC is not an accredited treatment facility and thus requiring Plaintiff to pay for his treatment there is unconstitutional because the treatment does not provide him with a meaningful opportunity for rehabilitation. Plaintiff further states he is required to pay for a GPS monitor while confined at the TCCC. Plaintiff states that he filed an affidavit of indigency in 2008.

Plaintiff further alleges that McLane and MTC have deliberately misclassified him as an independent contractor rather than employee, thus requiring him to pay the full amount for his Social Security and Medicare. Plaintiff alleges McLane and MTC control all of Plaintiff's work and thus he is an employee, not an independent contractor. Plaintiff alleges that MTC deliberately falsifies his income on his Form 1099 because they do not account for the 33% that is automatically deducted from his pay. In support, Plaintiff attaches his Form 1099s from 2020-2024. Plaintiff alleges that no court has ordered him to pay restitution.

Finally, Plaintiff alleges that the Texas Legislature "did away with" penile plethysmographs (PPG) and polygraph examinations in Senate Bill 746, and that McLane's treatment program is punitive and de facto criminal because it establishes child safety zones, mandates who Plaintiff can associate with, where he can live and work, and requires him to pass PPG and polygraph examinations to advance in treatment and be released.

Plaintiff raises the following claims:

1. Defendant McLane violated Plaintiff's substantive and procedural due process rights when she ordered him to be placed into inpatient treatment in the TCCC without a court order for inpatient treatment. Plaintiff has a liberty interest in outpatient treatment.

2. From May 1, 2019, to present, MTC violated Plaintiff's liberty interest to remain free from its total confinement facility. Plaintiff is unlawfully and falsely imprisoned by MTC in the TCCC.

3. McLane is unconstitutionally punishing Plaintiff by forcing Plaintiff into inpatient treatment despite his court order for outpatient treatment and supervision.

4. McLane is also unconstitutionally punishing Plaintiff by forcing him to pay 33% of all his income for treatment, housing, and GPS fees, in violation of his substantive due process rights.

5. McLane and MTC are subjecting Plaintiff to punitive conditions of confinement that are identical to or even more restrictive than those to which criminals are subjected.

6. McLane has violated Plaintiff's constitutional right to adequate sex offender treatment by exercising total control over whether Plaintiff participates in inpatient or outpatient treatment.

7. McLane has implemented policies and practices that resulted in the taking of Plaintiff's property in violation of the Fourteenth Amendment. This includes TCCO's Policy 3.5, "Cost Recovery Policy," which requires Plaintiff and all other civilly committed persons to pay 33% of their income to TCCO. Policy 3.5 is not reasonably related to Plaintiff's treatment and supervision. Policy 3.5 is also unconstitutional because it defines income to include long term disability benefits, retirement income, federal stimulus checks, pay received while working at the TCCC, and gifts from family and friends.

8. McLane and MTC created an unlawful scheme by treating Plaintiff as an independent contractor rather than employee. By labeling him as an independent contractor, Defendants avoided contributing to Plaintiff's Social Security and Medicare benefits, thereby violating his property interest in those accounts.

9. MTC has violated Plaintiff's Fourteenth Amendment rights by failing to declare on Plaintiff's Form 1099 that 33% of Plaintiff's income is automatically deducted. MTC does not have the right to take Plaintiff's money without a court order.

10. McLane's actions, described above, also violate Plaintiff's state constitutional rights to be free from unlawful confinement.

11. McLane violated state law by placing Plaintiff in total confinement without a warrant of process or commitment order.

12. McLane violated state law by seizing Plaintiff without a judicial determination of probable cause.

For relief, Plaintiff seeks injunctive relief, a declaratory judgment, compensatory damages, and punitive damages. He attached to his complaint his 2008 and 2013 final judgment and order of commitment; his amended order of civil commitment signed October 29, 20215; his Form 1099-NECs from 2020-2024; and his May 2025 resident statement which shows a "RESTITUTION" withdrawal of 25% of Plaintiff's April 2025 payroll. (ECF No. 1.)

Plaintiff also filed an application for preliminary and/ or temporary injunction. (ECF No. 17.) In it, he restates many of the allegations from his complaint and further argues that the use of PPGs and polygraphs as conditions for advancement in treatment tier violates his substantive due process rights. He seeks either a temporary restraining order or preliminary injunction prohibiting McLane from placing him in inpatient treatment, from retaliating against him, and from engaging in any action that would cause a reduction in his treatment tier.

Defendant MTC moves to dismiss Plaintiff's complaint, arguing his claims against them are barred by the statute of limitations; that he fails to state a claim against MTC because he does not complain about a particular policy; and that he fails to state an unconstitutional-takings claim against MTC. (ECF No. 14.)

Defendant McLane also moves to dismiss Plaintiff's complaint, first arguing the Court lacks subject-matter jurisdiction over Plaintiff's claims seeking injunctive relief because he does not allege an on-going constitutional violation. McLane further argues the Court lacks subject-matter jurisdiction over Plaintiff's claims seeking retrospective declaratory relief. As to the merits, McLane argues, among other things, that Plaintiff's claims are barred by the statute of

limitations; that, to the extent he seeks damages based on his unconstitutional confinement, this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); that his procedural and substantive due process claims fail to state a claim upon which relief can be granted; and that his state law claims should be dismissed. (ECF No. 22-23.) In response, Plaintiff restates the allegations and arguments from his complaint and his application for an injunction. (ECF No. 30.)

## II. LEGAL STANDARDS

1. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

2. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a

motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above the speculative level) (citation omitted). Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to meet the required pleading standard. *Iqbal*, 566 U.S. at 678.

The Court construes a pro se plaintiff's allegations liberally, holding the plaintiff to "less stringent pleading standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a plaintiff's pro se status does not offer him an "impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

## III. DISCUSSION & ANALYSIS

1. Application for Preliminary and/or Temporary Injunction

"A plaintiff seeking a preliminary injunction must establish he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). It is well established that an injunction is an extraordinary remedy designed to preserve the status quo during the pendency of the litigation. *Byrum v. Landreth*, 566 F.3d 422, 445 (5th Cir. 2009). Preliminary injunctions are "not to be granted routinely, but only when the movant, by clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

As the Court details below, Plaintiff fails to show he is entitled to a preliminary injunction because his claims are either barred by the statute of limitations or they fail to state a claim upon which relief can be granted. Further, to the extent Plaintiff seeks an injunction regarding the use of PPGs and polygraph examinations, the Court first notes that, as a civil committee, Plaintiff is "'entitled to more considerate treatment and conditions of confinement than criminal whose conditions of confinement are designed to punish'"; however, "the Constitution nevertheless affords a state wide latitude in crafting a civil commitment scheme." *Brown v. Taylor*, 911 F.3d 235, 243 (5th Cir. 2018) (quoting *Youngberg*, 457 U.S. 307, 321-22 (1982)). In the context of civil commitment, substantive due process requires "only that 'the conditions and duration of confinement … bear some reasonable relation to the purpose for which persons are committed.'" *Brown*, 911 F.3d at 243 (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)). In Texas, the purposes of civil commitment are the "twin goals of 'long-term supervision and treatment of

sexually violent predators.'" *Id*. (citation omitted). Plaintiff fails to show that the PPG and polygraph examinations do not bear some reasonable relationship to the goals of supervision and treatment. As such, Plaintiff is also not entitled to a preliminary injunction on this claim.

2. Eleventh Amendment Immunity

Defendant McLane argues Plaintiff's complaint is barred by *Ex parte Young* because he does not allege an ongoing violation of his constitutional rights. Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such indirect pleading remains, in essence, a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994). However, *Ex parte Young*, 209 U.S. 123 (1908), permits lawsuits seeking prospective relief against state officials in their official capacities for ongoing violations of federal law. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (en banc).

In his complaint, Plaintiff seeks an injunction preventing Defendants from (1) retaliating against Plaintiff; (2) interfering with Plaintiff's First Amendment rights to contact individuals with knowledge of his complaint's allegations; (3) interfering with Plaintiff's right to access the court; (4) requiring Plaintiff to answer specific incriminating questions on a polygraph examination; and (5) denying Plaintiff constitutionally adequate sex offender therapy. (ECF No. 1 at 23.) Liberally construing Plaintiff's complaint, *see Haines*, 404 U.S. at 20-21, the Court concludes that when Plaintiff requests an injunction prohibiting McLane from denying him constitutionally adequate sex offender therapy, he is seeking an injunction preventing McLane from keeping him in inpatient

sex offender treatment when, he argues in his complaint, he should be in outpatient sex offender treatment. Based on this, the Court concludes Plaintiff has sufficiently alleged that he seeks prospective injunctive relief for an ongoing violation of his constitutional rights.[2]

3. Statute of Limitations

Both McLane and MTC argue that many, if not all, of Plaintiff's claims are barred by the statute of limitations. The statute of limitations for a § 1983 claim is determined by the forum state's limitations period for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, that is two years from the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 331 (5th Cir. 1994). It is federal law which determines when a § 1983 cause of action accrues. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). Under federal law, a cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action. *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

In claims 1-3 and 6, Plaintiff argues that McLane and MTC have violated his constitutional rights by confining him to inpatient treatment at TCCC even though the final judgment in his original civil commitment case states he was to receive outpatient treatment. Plaintiff alleges that, on September 1, 2015, he was forcibly put on a bus and taken to the TCCC for his inpatient treatment. Therefore, as of September 1, 2015, Plaintiff was aware that he was no longer in outpatient treatment. As a result, his claims based on his transfer from outpatient to inpatient treatment accrued by September 1, 2017, two years after his removal to the TCCC but Plaintiff

[2] Defendant McLane is entitled to Eleventh Amendment immunity from Plaintiff's other requests for injunctive relief because he does not allege in his complaint that he is being retaliated against, that he cannot contact individuals regarding his complaint allegations, that Defendants are interfering with his right to access the courts, or that he has been required to answer incriminating questions during a polygraph examination. However, Plaintiff also does not raise any legal claims that would lead to the granting of these injunctions.

filed this action in July 2025, almost 8 years later. Accordingly, claims 1-3 and 6 are barred by the statute of limitations.

In claims 8-9, Plaintiff argues MTC and McLane have violated his constitutional rights by categorizing him as an independent contractor rather than an employee, and by failing to declare on Plaintiff's Form 1099-NEC that 33% of Plaintiff's income is automatically deducted from his account by TCCO. In support, Plaintiff attaches copies of his 1099-NEC forms from 2020-2024. Again, based on Plaintiff's allegations, he was aware of these issues sometime in 2021, when he received the 2020 1099-NEC form. These forms are required to be furnished to payees by January 31.[3] Even if Plaintiff failed to receive this document for several weeks, his claim accrued no later than February 28, 2023. Accordingly, because Plaintiff did not file his complaint until July 2025, his claims are over 2 years late and barred by the statute of limitations.

4. Cost Recovery Policy

Plaintiff claims McLane is punishing him by forcing him to pay 33% of his income for treatment, housing, and GPS monitoring fees, which violates his substantive due process rights. He further argues this constitutes a taking of his property in violation of the Fourteenth Amendment, and that TCCO Policy 3.5 is unconstitutional because it defines "income" to include long-term disability benefits, retirement income, federal stimulus income, pay received from working at the TCCC, and gifts from family and friends.

Pursuant to Texas Health & Safety Code § 841.084, non-indigent SVPs are responsible for the cost of their treatment, housing, and tracking services, and must pay a monthly amount to the TCCO to defray these costs. TEX. HEALTH & SAFETY CODE ANN. § 841.084 (West 2021) (Payment

[3] *See* Instructions for Forms 1099-MISC and 1099-NEC (12/2026), https://www.irs.gov/instructions/i1099mec (last visited July 9, 2026).

of Costs by Committed Person). TCCO Policy 3.5, entitled "Cost Recovery for Service"[4] implements section 841.084, and as of September 10, 2021, requires TCCC clients to pay twenty-five percent (25%) of their monthly income toward cost recovery. The policy defines income to include, but not limited to, "money received from employment, to include wages, salaries, tips and other taxable employee pay; disability benefits; net earnings from self-employment; net gain from the sale of property purchased while under civil commitment; net income from rental property or an ownership in an on-going business; interest or dividend income; retirement income; social security income; unemployment benefits; proceeds from lottery winnings and gifts of cash." The policy further defines indigency as "when a client's monthly income is zero."

Plaintiff argues that, at his 2008 civil commitment hearing, a state court found him to be indigent; thus, any cost-recovery against him is unlawful. But based on the policy's definition of indigency and Plaintiff's 1099-NEC forms, it is clear he has not been indigent since 2020. Plaintiff further argues that the policy constitutes an unconstitutional taking of his property under the Fourteenth Amendment. Due-process requirements for deprivations caused by state actors' authorized conduct are different from those caused by unauthorized conduct. When a deprivation is authorized by an official policy, a prisoner—or in this case, civil committee—must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007). Here, Plaintiff does not allege any facts suggesting he was not provided with notice or an opportunity to be heard prior to being assessed his cost-recovery fees. Accordingly, he has failed to state a claim for a violation of his right to procedural due process.

[4] *See* TCCO Policy 3.5, Cost Recovery for Service, https://tcco.texas.gov/sites/default/files/documents/policies/policy-3-35-cost-recovery-for-service.pdf (last visited July 10, 2026).

To the extent Plaintiff argues the policy violates his rights to substantive due process, he fails to show that it bears no reasonable relationship between his supervision and treatment. "When inmates are non-indigent, the state may generally assess costs for services rendered." *May v. Bell*, No. 2025 WL 2844784, at *26 (N.D. Tex. 2025) (citing *Baughman v. Garcia*, 254 F.Supp.3d 848, 876 n.145 (S.D. Tex. 2017)); *see also Matzen v. McLane*, 659 S.W.3d 381, 393 (Tex. 2021) (holding that Tex. Health & Safety Code § 841.084(a) does not constitute an unconstitutional taking; concluding the government may charger "user fees" for the value of services rendered without implicating takings law.) Plaintiff receives a variety of services while civilly committed at the TCCC, including medical care, meals, housing, and sex offender therapy. Accordingly, he fails to show that the Cost Recovery Policy does not bear a reasonable relationship to his supervision and treatment.

5. Punitive Conditions of Confinement

Plaintiff next argues that McLane and MTC are violating his constitutional rights by subjecting him to punitive conditions of confinement that are identical or more restrictive than those experienced by incarcerated prisoners. This claim was foreclosed in *Brown*, where the Fifth Circuit held that "[p]roximity to prisoners and restrictive conditions alone do not state a due process claim." *Brown*, 911 F.3d at 243. As a result, this claim also fails as a matter of law.

6. State Law Claims

Finally, Plaintiff raises three claims based on violations of state law. In general, a federal court that has original jurisdiction over some claims has the discretion to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(a). However, because the Court dismissed the federal claims over which it had original jurisdiction, it must decide whether to retain supplemental jurisdiction over Plaintiff's state-law claims. *See United Mine Workers of Am. v.*

*Gibbs*, 383 U.S. 715, 726 (1966) (Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right."). Federal district courts enjoy "broad discretion in deciding whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

Here, the Court dismissed Plaintiff's claims for as either barred by the statute of limitations or failing to state a claim upon which relief can be granted. Because all of Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) ("[A] court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.") (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009)).

It is therefore **ORDERED** that Plaintiff's Application for a Preliminary and/or Temporary Injunction (ECF No. 17) is **DENIED**.

It is further **ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 14, 22) are **GRANTED** and Plaintiff's federal claims are **DISMISSED WITH PREJUDICE** as barred by the statute of limitations and for failure to state a claim upon which relief can be granted. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and thus these claims are **DISMISSED WITHOUT PREJUDICE**.

SIGNED this 27th day of July, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE